**E-FILED**
Wednesday, 20 February, 2008  10:05:10 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-CR-30116 |
| | ) | |
| JOHN STOTLER, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This cause comes before the Court on Defendant John Stotler's Motion to Suppress Evidence (d/e 12) (Motion to Suppress). The motion is fully briefed, and pursuant to Local Rule 72.1, the District Judge has referred the matter to me for an evidentiary hearing and Report and Recommendation. See Text Order, January 4, 2008. After carefully considering all of the submissions of the parties, hearing evidence on the matter, and pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Motion to Suppress be DENIED.

## I. BACKGROUND[1]

Defendant John Stotler (hereinafter Stotler) is charged in a one-count Indictment (d/e 6) with possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). This Court held an evidentiary

---

[1] **This Report and Recommendation is prepared without the benefit of a transcript.**

hearing on the Motion to Suppress on February 5, 2008.  Based upon the testimony heard in open court, Stotler was arrested on April 20, 2007, in Quincy, Illinois, pursuant to an outstanding misdemeanor warrant from Adams County. Subsequent to Stotler's arrest, the pickup truck that he was driving was searched by law enforcement officials.  Law enforcement officials testified that the search revealed, among other things, hydrocodone pills, batteries that were believed to contain lithium, and two plastic baggies containing methamphetamine.  Stotler seeks to suppress all of the evidence seized from the truck, asserting that the search violated his Constitutional rights under the Fourth Amendment.

The Government called six witnesses at the hearing on the Motion to Suppress – Illinois State Police (ISP) Inspector Matt McElfresh, Inspector Doug McQuern of the Quincy Police Department (QPD), ISP Special Agent Seth Knox, Hancock County Sheriff's Deputy Mike Norris, QPD Officer Brian Martin, and ISP Sergeant Pat Frazier.  The Defense rested without calling any witnesses.  The following facts are taken from the testimony presented.

McElfresh testified that he has been involved with investigating methamphetamine cases since 2001 and that he is currently assigned to the West Central Illinois Task Force.  McElfresh stated that he is familiar with the precursors for making methamphetamine, which he identified to include lithium batteries, pseudoephedrine, anhydrous ammonia, and salt.  Illinois law prohibits individuals from knowingly purchasing products containing more than a total of

7,500 milligrams of pseudoephedrine within any 30-day period.  720 ILCS 648/20 & 40.  According to McElfresh, an investigation began in January 2006 regarding Stotler's involvement in manufacturing methamphetamine after methamphetamine manufacturing equipment was found in his home during an investigation of a domestic disturbance.  In August 2006, an Adams County state judge issued an arrest warrant for Stotler based on his alleged over purchasing of pseudoephedrine.  That warrant remained outstanding in April 2007.

McElfresh testified that, on April 19, 2007, a confidential source, later identified as Michael Childress, contacted him with information regarding Stotler. According to McElfresh, Childress stated that Stotler wanted to purchase 1,500 pseudoephedrine pills for $600.00 and would come to Childress' house in Quincy, Illinois at 5:00 p.m. on April 20th to complete the transaction.  McElfresh testified that Stotler lived in West Point, Illinois, which is approximately thirty-five to forty miles from Quincy.

McElfresh testified that he gave Childress 1,500 pseudoephedrine pills and instructed him to conduct the transaction with Stotler.  McElfresh testified that a law enforcement surveillance team was set up outside Childress' house on the afternoon of April 20, 2007.  According to McElfresh, he instructed Childress to call his cell phone and hang up when Stotler arrived and again when Stotler left the house.  McQuern testified that the surveillance team was briefed prior to the

surveillance that there was an outstanding arrest warrant for Stotler, who was expected to arrive at Childress' house in a 1993 GMC pickup truck.

McElfresh testified that the officers on the surveillance team were in radio contact with one another.  McElfresh testified that, at 5:00 p.m., Sergeant Frazier announced that a pickup truck had arrived at Childress' house.  McElfresh testified that Frazier continued to advise the team by radio of Stotler's actions which included a conversation with Childress.  According to McElfresh, Frazier then informed the officers that Stotler was leaving Childress' house.  McElfresh directed the officers to stop Stotler and arrest him on the outstanding Adams County warrant.

McQuern testified that, at this command, the officers executed a traffic stop on Stotler's truck.  According to McQuern, Stotler was stopped within one hundred feet of leaving Childress' house.  McQuern testified that he pulled his vehicle in front of Stotler's truck to box him in, while other officers pulled behind Stotler and activated their lights.  According to McQuern, Stotler exited the vehicle on command, but did not put his hands up as directed, rather he kept reaching into his pockets.  McQuern testified that one of the other officers drew his weapon on Stotler, while McQuern approached Stotler and pressed him up against the truck.  According to McQuern, Stotler was informed that there was an outstanding warrant for his arrest, but Stotler refused to place his hands behind his back as requested.  McQuern testified that he then took Stotler to the ground

**Page 4 of  16**

and, with the help of other officers, forcibly placed Stotler's hands behind his back and handcuffed him.  McQuern testified that he then began to search Stotler's person.

According to McElfresh, when he arrived on the scene of the arrest McQuern was handcuffing and searching Stotler.  The search of Stotler's person uncovered a photo identification, a wallet, $600.00 in his right front pocket, and some additional money in his left front pocket.  McQuern testified that he gave these items to McElfresh and placed Stotler in a squad car.  Stotler was transported to the QPD by Eric Johnson.  At that point, McQuern and McElfresh began to search the cab of Stotler's pickup truck.  According to McQuern, there were seven or eight officers on the scene at this point, and the other officers stood around the truck as McQuern and McElfresh searched the cab.  On cross-examination, McQuern was questioned about the statement in his report of the incident that "officers search the interior of the truck."  McQuern testified that he was referring to himself and McElfresh.

McQuern and McElfresh described the cab as messy and testified that, as they searched the cab, they removed some objects and placed them on the truck's vinyl bed cover.  McElfresh testified that he discovered 7.5 hydrocodone pills and twelve lithium batteries in the glove compartment.  According to McElfresh, hydrocodone is a controlled substance that must be carried in a bottle together with prescription information.  See 720 ILCS 570/206 (b)(1)(x) (listing

hydrocodone as a Schedule II controlled substance).  McElfresh testified that he recognized the pills to be hydrocodone based on their size, shape, color, and markings.  McElfresh stated that the hydrocodone in the glove box was in a plastic baggie with no prescription information.  Government's Ex. 14 is a photograph of the hydrocodone pills in the baggie.  McElfresh testified that this photograph was taken more than thirty minutes after the pills were discovered and did not reflect the area where the pills were found.  McElfresh described the batteries as watch-type batteries and stated that, in his opinion, they were not consistent with a flashlight, camera, or tape recorder.  McElfresh testified that there was not a photograph taken of the batteries.

McElfresh stated that, after he discovered the improperly packaged hydrocodone and the batteries, he informed the other officers of his find, left the pills in the glove compartment, and went to speak to Childress.  McElfresh testified that Childress informed him that the sale was not completed because Stotler wanted to go to Wal-Mart to check the ingredients of the pills prior to purchasing them.

Deputy Norris testified that he was on the scene and observed McElfresh and McQuern searching the cab of the truck.  Norris testified that he heard McElfresh advise that he found the hydrocodone and saw McElfresh hold up the pills.  Norris stated that, at this point, he approached the truck and opened the locked tailgate to allow officers to search the bed of the truck, which was covered

by a vinyl cover.  Agent Knox testified that, after McElfresh announced that he found the hydrocodone, he and Officer Martin began to search the bed of the truck.  Martin also testified that he and Knox searched the bed after McElfresh and McQuern searched the cab and McElfresh announced that he found pills outside of a pill bottle and held them up.  According to Knox, he photographed the truck and the items uncovered in the search on Sgt. Frazier's camera.  Knox testified that he took the photographs presented as Government's Ex. 1 through 14.  According to Knox, the camera's automatic time stamp was wrong and that, while the photos indicate that they were taken beginning at 4:07 p.m., he actually began photographing at 5:20 p.m.  Martin testified that Government Ex. 1 through 13 represented the chronological order of when the items were found in the search.  Martin testified that the pills seen in Government Ex. 14 were found first, but photographed last.  The search of the truck bed uncovered two plastic baggies containing methamphetamine and another baggie, labeled "cut," containing a powdery substance concealed in a paint sprayer as well as a digital scale.

## II.  ANALYSIS AND CONCLUSIONS OF LAW

The Fourth Amendment to the Constitution guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  A defendant seeking to suppress evidence because of a violation of the Fourth Amendment

must first establish that he has standing to challenge the search or seizure.

United States v. Sweeney, 688 F.2d 1131, 1143 (7th Cir. 1982).  Once the

defendant has established standing in a case in which law enforcement officers

conducted a warrantless search, the burden of proof shifts to the government,

because warrantless searches are "per se unreasonable under the Fourth

Amendment-subject only to a few specifically established and well-delineated

exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967).  At that point, the

Government bears the burden of establishing by a preponderance of the

evidence that an exception to the warrant requirement applies.  United States v.

Basinski, 226 F.3d 829, 833 (7th Cir. 2000).

In the instant case, the Government conceded, on the record at the

evidentiary hearing, its belief that Stotler had standing to challenge the search at

issue.  This Court also believes that based on the evidence presented that

Stotler has Fourth Amendment standing.  Thus, the burden shifts to the

Government to establish, by a preponderance of the evidence, that an exception

to the warrant requirement applies.  The Government asserts that probable

cause existed to search the entire vehicle from the time Stotler arrived at

Childress' house and, alternatively, that the search of the cab was a valid search

incident to Stotler's arrest which provided probable cause for the search of the

truck bed.[2]  The Court finds both bases to be persuasive.

As an initial matter, Defendant questions whether the search was actually

conducted based on probable cause, asserting that the officers based their

decision to search solely on the search incident to arrest exception.  As the Court

will discuss, infra., a search incident to the arrest of a vehicle driver or passenger

is limited in scope and expressly excludes the trunk or any other portion of the

vehicle except the passenger compartment.  In support of his position, Defendant

offered the written probable cause statement that McElfresh prepared in

connection with Stotler's arrest as Defendant's Ex. 1.  The narrative portion of

the probable cause statement reads in relevant part as follows: "Stotler was

taken into custody from his vehicle.  A search of the vehicle incident to his arrest

---

[2]The Court notes that on cross-examination of McElfresh, Defendant elicited evidence relating to the delay between the August 2006 issuance of the Adams County arrest warrant for Stotler and its execution.  This issue was not formally raised by the Defendant, nor was it briefed; however, Defendant alluded to it in summation.  The Court will thus address it briefly.  As the Seventh Circuit has recognized, "The fourth amendment's rules for warrants do not include time limits." United States v. Martin, 399 F.3d 879, 881 (7th Cir. 2005).  The Court recognizes that, under the Fourth Amendment, seizures must be reasonable, and in some instances, "[p]assage of time could affect reasonableness." Id.  However, in the instant case, Inspector McElfresh testified that he had no contact with Stotler from August 2006 until the date of the arrest.  Although McElfresh was aware that Stotler was residing in Hancock County, he explained that generally the Task Force was too busy to execute state arrest warrants in Hancock County.  Moreover, the Seventh Circuit has recognized that "Agents are not obligated to make arrests as soon as possible; they may continue investigations in order to acquire additional evidence." United States v. Limares, 269 F.3d 794, 798 (7th Cir. 2001).  Additionally, the Court infers from the number of officers and manner in which the arrest was carried out that a tactical decision was made regarding the manner in which Stotler would be arrested.  The Court is aware that for officer safety it is often standard procedure to stop an individual in his or her vehicle.  The Court does not believe that execution of the arrest warrant in the instant case was unreasonable in any way.

agents located in the bed of the truck inside a paint gun several grams of a

powder that field tested positive for meth.  Digital scales were also located in the

bed of the truck with powder residue."  Based on this report, Defendant asserts

that the only justification for the search was as a search incident to arrest, and

thus the scope did not extend beyond the passenger compartment.  The

probable cause statement, however, is a summary document, which was

prepared in connection with Stotler's being booked on the additional charges.  It

is not conclusive to this Court on the question of the officers' justification for the

search at issue.  Other evidence indicates that the officers based their decision

to search on probable cause grounds as well.  Thus, the Court turns its attention

to the question of whether probable cause existed to support the search of the

pickup bed from the time Stotler arrived at Childress' house under the automobile

exception.

The automobile exception allows allows for a warrantless search of a car

when officers have probable cause to believe the car contains contraband or

evidence of a crime.  See Carroll v. United States, 267 U.S. 132, 153-56 (1925).

"A search of an automobile based on probable cause lawfully extends to all parts

of the vehicle in which contraband or evidence could be concealed, including

closed compartments and trunks."  United States v. Patterson, 65 F.3d 68, 70 (7th

Cir. 1995) (internal quotations and citation omitted).  Probable cause exists if,

given the totality of the circumstances, there is a "fair probability that contraband

or evidence of a crime will be found in a particular place." Illinois v. Gates, 462

U.S. 213, 238 (1983).

At the time of Stotler arrived at Childress' house, officers knew that Stotler

had an outstanding warrant for purchasing excessive amounts of

pseudoephedrine.  They also knew that methamphetamine manufacturing

materials had been seized from Stotler's house in January 2006.  Childress had

informed officers that Stotler would be coming to his house at 5:00 p.m. to

purchase a large amount of pseudoephedrine for $600.00.  Officers observed

Stotler arrive as predicted and leave the house after a brief interaction.

Defendant asserts that Childress is not credible because he was cooperating

with authorities in order to "work off" pending charges.  However, Childress'

information was self-incriminating, in that he admitted to McElfresh that he had

used methamphetamine with Stotler, and corroborated by the fact that Stotler

arrived as predicted. The officers were justified in relying on it as part of their

probable cause analysis.  See United States v. Washburn, 383 F.3d 638, 642 (7th

Cir. 2004).  Under the totality of the circumstances, there was a fair probability

that contraband or evidence of a crime would be found in Defendant's truck.

Thus, probable cause existed to search the entire truck under the automobile

exception.  Defendant's Motion to Suppress should be denied on this basis

alone.

The Court turns next to the alternative argument that the search of the cab was a valid search incident to Stotler's arrest which provided probable cause for the search of the truck bed.  Stotler does not contest the validity of his arrest on the state warrant.  In New York v. Belton, the United States Supreme Court set out a bright-line rule that allows law enforcement officers to conduct a warrantless search of the entire passenger compartment of an automobile as a search incident to the custodial arrest of an occupant or recent occupant of the automobile, both for officer safety and to preserve evidence.  Belton, 453 U.S. 454, 460 (1981); Thornton v. United States, 541 U.S. 615, 623 (2004).  The rationale for the Belton rule "is that there might be a weapon within the occupant's reach that he might grab, or contraband or evidence of crime that he might try to flee with, throw away, conceal, or in some cases even swallow." United States v. Pittman, 411 F.3d 813, 816 (7th Cir. 2005).  This is a bright line rule that applies even in cases in which the arrested occupant has been removed from the vehicle and subdued.  See United States v. Richardson, 121 F.3d 1051, 1053, 1056-57 (7th Cir. 1997).  Thus, it is clear that the search of the cab of the pickup was Constitutionally valid under Belton.

As the Court stated at the evidentiary hearing, the chronology of events is very important in the instant case.  Defendant makes the factual argument that the search of the cab was not performed prior to the search of the truck bed. However, the record evidence is to the contrary.  McElfresh, McQuern, Knox,

**Page 12 of  16**

　
Norris, and Martin each testified that the bed of the truck was not searched until after McElfresh discovered the hydrocodone and the batteries in the glove compartment.  Defendant identifies no evidence to the contrary.  While Knox photographed the hydrocodone pills after the items that were discovered in the bed, the record is clear that the hydrocodone was discovered first and merely photographed last.

It is also clear from the record that, during the search of the cab, McElfresh discovered the hydrocodone pills improperly packaged in a plastic baggie and lithium batteries in the glove compartment.  Defendant points to no evidence to contradict McElfresh's testimony on this point, only evidence that other officers on the scene did not see McElfresh uncover the pills and batteries.  Given the factual circumstances of the case, however, this fact is unpersuasive because there is no evidence that the others could see or should have seen McElfresh as he uncovered the items in the glove compartment.

The instant case is similar to United States v. Johnson, in which an officer arrested Johnson, the driver of a vehicle, based on an outstanding arrest warrant.  Johnson, 383 F.3d 538, 545 (7th Cir. 2004).  While performing a valid search of Johnson's person pursuant to the outstanding arrest warrant, the officer discovered what he believed to be a controlled substance.  Id.  The Seventh Circuit held that this discovery provided the officer with probable cause

to search the entire vehicle, including the trunk, under the automobile exception

to the warrant requirement.  Id. at 545-46.

At the time of the search of the pickup bed, officers knew that Stotler had

an outstanding warrant for purchasing excessive amounts of pseudoephedrine.

They also knew that methamphetamine manufacturing materials had been

seized from Stotler's house in January 2006.  Childress had informed officers

that Stotler would be coming to his house at 5:00 p.m. to purchase a large

amount of pseudoephedrine for $600.00.  Officers observed Stotler arrive as

predicted, and a search of Stotler's person revealed $600.00 held separately

from his other cash.  Significantly, McElfresh had discovered the unlawfully

packaged hydrocodone pills and lithium batteries, which he believed to be

precursors for manufacturing methamphetamine, during a valid search incident

to Stotler's valid arrest.  While Stotler proffers in his written pleadings that the

pills were vicodin, for which he had a valid prescription at the time of the search,

there is no evidence that the officers knew about the prescription on the date of

the search.  It is also clear from the evidence that the pills seized were stored

improperly without prescription information.  The unlawfully stored pills alone are

sufficient to provide probable cause to believe that the pickup contained

additional contraband or evidence.  See United States v. McGuire, 957 F.2d 310,

314 (7th Cir. 1992).  Based on the totality of the circumstances known to the

officers at the time the bed of the truck was searched, there was a fair probability

that contraband would be found in the truck bed, and thus, probable cause to

search existed.  See Carroll, 267 U.S. at 153-56.  This probable cause gave the

officers the authority to search every part of the vehicle, including the locked

truck bed and closed containers within it.  See Patterson, 65 F.3d at 70.

Therefore, the Court believes that the record supports a finding that the

warrantless search of the truck bed is also justified based on the totality of

circumstances known to the officers after the valid search incident to arrest.  The

Motion to Suppress should be denied on this basis as well.  Because the

Government has established two valid justifications for the warrantless search,

the Court need not address Defendant's contention that the search cannot be

justified under the inventory search exception set out in South Dakota v.

Opperman, 428 U.S. 364 (1976).


## III. CONCLUSION

For all the above reasons, I recommend that Defendant's Motion to

Suppress Evidence (d/e 12) be DENIED.

The parties are advised that any objection to this Report and

Recommendation must be filed in writing with the Clerk of the Court within ten

working days after being served with a copy of this Report and

Recommendation.  See 28 U.S.C. § 636(b)(1).   Failure to file a timely objection

will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio

21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local Rule 72.2.


ENTER:   February 20, 2008

                              s/ Byron G. Cudmore

                    _____
                              BYRON G. CUDMORE
                    UNITED STATES MAGISTRATE JUDGE