IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-30116 |
| | ) | |
| JOHN STOTLER, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION
=======

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant's Objection to Report and Recommendation by Magistrate Cudmore Entered February 27, 2008 [sic] (d/e 26) (Objection). Stotler filed a Motion to Suppress Evidence (d/e 12) (Motion to Suppress). The Court referred the Motion to Suppress to United States Magistrate Judge Byron G. Cudmore to conduct an evidentiary hearing and issue a Report and Recommendation. January 4, 2008 Order. Judge Cudmore conducted an evidentiary hearing on February 5, 2008, and recommended denying the Motion to Suppress. Report and Recommendation entered February 20, 2008 (d/e 25). Stotler now objects. This Court must review the Motion to Suppress and the Report and

1

Recommendation <u>de novo</u>.  28 U.S.C. § 636(b)(1)(B)&(C).  The Court has reviewed the transcript of the hearing, the evidence submitted at the hearing, the Objection, and the arguments submitted by the parties.  For the reasons set forth below, the Court overrules the Objection and adopts the Report and Recommendation.

## FACTS

In a Superseding Indictment (d/e 28), the Government has charged Defendant Stotler with one count of possession of pseudoephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(1); one count of attempted possession of pseudoephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C. §§ 846 & 841(c)(1); and one count of possession of a mixture containing methamphetamine with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C).

Pursuant to an outstanding misdemeanor warrant from Adams County, Illinois State Police (ISP) officers, in cooperation with the Hancock County Sheriff's Office and the Quincy Police Department, arrested Stotler April 20, 2007, in Quincy, Illinois.  <u>February 5, 2008 Hearing Transcript (d/e 30) (Transcript)</u>, at 18.  After his arrest, the officers searched the

pickup truck he was driving and discovered hydrocodone pills, batteries, and two plastic baggies of methamphetamine. Id. at 21, 93-95. Stotler argues that the search of his truck was an illegal search under the Fourth Amendment, and therefore all fruits of the search should be suppressed.

ISP Inspector Matt McElfresh testified that in January of 2006, the ISP began an investigation of Stotler after methamphetamine manufacturing equipment was found in his home during an investigation of a domestic disturbance. Id. at 11, 42. In August of 2006, an Adams County judge issued an arrest warrant for Stotler based on alleged overpurchasing of pseudoephedrine, a precursor for methamphetamine manufacture. Id. at 9-10. In Illinois, individuals cannot purchase products containing more than 7,500 mg of pseudoephedrine over any 30-day period. 720 ILCS 648/20 & 40. Police did not immediately act on the arrest warrant, however. In April of 2007, it remained outstanding. Transcript, at 10.

According to McElfresh, on April 19, 2007, an individual named Michael Childress told him that he had arranged a pseudoephedrine purchase to Stotler. Id. at 12-13. Childress, a convicted methamphetamine possession felon, who had been arrested again on the same charge, was cooperating with the ISP as a confidential source. Id. at 39-40. He told

McElfresh that Stotler wanted to purchase 1,500 pseudoephedrine pills for $600 and would come to Childress' house in Quincy, Illinois, at 5:00 p.m. the next day to complete the transaction. <u>Id.</u> at 13-15. He told McElfresh that Stotler had two vehicles, one of which was a teal pickup truck. <u>Id.</u> at 29, 58. Stotler lived 35 to 40 minutes away in West Point, Illinois. <u>Id.</u> at 14.

McElfresh gave Childress 1,500 pseudoephedrine pills to use in the transaction and arranged for a law enforcement surveillance team outside Childress' home on the afternoon of April 20, 2007. <u>Id.</u> at 15. The surveillance team knew of Stotler's outstanding arrest warrant and maintained radio contact with each other during the surveillance. <u>Id.</u> at 58-59. At 5:00 p.m., ISP Sergeant Pat Frazier announced that a teal GMC pickup had arrived at Childress' house. <u>Id.</u> at 17.

After Stotler's arrival, Frazier continued to advise the surveillance team of his actions via radio. <u>Id.</u> Stotler had a conversation with Childress at the rear of his truck. <u>Id.</u> He then began leaving. <u>Id.</u> McElfresh directed the officers to stop Stotler and arrest him on the outstanding warrant. <u>Id.</u> The officers executed a traffic stop within 100 feet of Childress' home. <u>Id.</u> at 59-60. Stotler exited the truck, and the officers informed him of the

4

outstanding arrest warrant. Id. at 60. A search of Stotler's person yielded photo identification, a wallet, $600 in his right front pocket, and additional money in his left front pocket. Id. at 18-19, 63-64. McElfresh retained these items, and ISP officer Eric Johnson drove Stotler to the Quincy Police Department. Id. at 19-20, 64, 102.

At least five other police officers remained at the scene. Id. at 27-28. McElfresh and Quincy Police Department Inspector Doug McQuern began to search the cab of Stotler's truck. Id. at 21. McElfresh testified that he discovered 7.5 hydrocodone pills and twelve lithium batteries in the glove box. Id. at 21, 24. McElfresh knew that under Illinois law, hydrocodone, a prescription pain reliever often sold illegally, must be carried in a bottle with prescription information. Id. at 21-22. These pills were in a plastic baggie without prescription information. Id. at 23. Additionally, lithium is used in the manufacture of methamphetamine. Id. at 24.

McElfresh testified that after discovering the hydrocodone pills and batteries, he told the other officers of them and returned the pills to the glove box. Id. at 38, 50. He stated that he then went to debrief Childress; when he returned, he removed the pills from the glove box and placed them

5

on the tailgate where they were photographed.[1]  Id. at 38, 51.  McQuern testified that he searched the cab with McElfresh and McElfresh discovered the pills.[2]  Id. at 64, 71.

Hancock County Sheriff's Deputy Mike Norris was at the scene and testified that he heard McElfresh advise that he had found the hydrocodone pills.  Id. at 112.  He also saw McElfresh hold up the pills.  Id. at 113.  Norris then approached the truck and opened the locked tailgate to allow other officers to search the covered bed of the truck.  Id. at 91, 107.  Quincy Police Department Officer Brian Martin also testified that he heard McElfresh announce his discovery of the hydrocodone pills.  Id. at 120. ISP Special Agent Seth Knox and Martin then began to search the bed of the truck.  Id. at 28, 120.  They discovered two plastic baggies containing methamphetamine and another plastic baggie, labeled "cut," containing a

---

[1] In his Objection, Stotler asserts that McElfresh testified that after he returned the pills to the glove box, McQuern removed them.  He argues that McQuern's later testimony that McQuern never removed the pills from the glove box demonstrates that McElfresh's testimony was not credible.  The Transcript, however, indicates that McElfresh testified that he himself removed the pills after debriefing Childress. Transcript, at 51.

[2] In his Objection, Stotler also contends that McQuern testified that he did not see McElfresh discover the pills or remove them from the glove box.  The Transcript does not reflect such testimony.  In fact, McQuern agreed that "it was McElfresh who took the pills out of the glove box."  Transcript, at 71.

6

powdery substance. Id. at 93-95. The baggies were all hidden in a paint sprayer. Id. at 92-94. The officers also discovered a set of digital scales. Id. at 91.

The Government introduced 14 exhibits at the suppression hearing. All 14 were photographs of items discovered in the search of Stotler's truck. Id. at 88-97. Government Exhibit 14 was a photograph of the hydrocodone pills. Id. at 97. Martin testified that while Government's Exhibits 1-13 are photographs of the initial appearance of the truck and then items found in chronological order, the hydrocodone pills were the first items discovered, and thus, Government Exhibit 14 is out of chronological order. Id. at 126.

McElfresh testified that during his debriefing of Childress, Childress told him that he had not completed the drug transaction because Stotler wanted to check the pill ingredients at Wal-Mart before buying them. Id. at 53. Thus, the predicted drug sale did not take place.

## ANALYSIS

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. After a defendant asserting a Fourth Amendment violation establishes that he has standing to challenge

a warrantless search or seizure, the Government must prove by a preponderance of the evidence that the search or seizure fell within a specifically established and well-delineated exception to the warrant requirement.  See United States v. Sweeney, 688 F.2d 1131, 1143 (7th Cir. 1982); United States v. Basinksi, 226 F.3d 829, 833 (7th Cir. 2000).  Here, the Government does not contest Stotler's standing to challenge the search and seizure at issue, and the Court sees nothing in the record suggesting that he lacks standing.  Thus, the only issue is whether the Government has proven by a preponderance of the evidence that an exception to the warrant requirement applies.

The Court holds that it has.  In his Report and Recommendation, Judge Cudmore found that by the time Stotler arrived at Childress' house, probable cause existed to justify the warrantless search of Stotler's truck, including the bed of the truck.  Alternatively, Judge Cudmore found that the search of Stotler's truck cab was a valid search incident to his arrest on the state arrest warrant, and once the hydrocone pills were discovered there, probable cause to search the truck bed existed.

Stotler objects to both findings, based on credibility arguments.  First, Stotler contends that Childress was an unreliable informant because he was

cooperating only to obtain a better deal on his own drug charges and because the drug transaction Childress predicted never took place. Thus, according to Stotler, probable cause did not exist by the time Stotler arrived at Childress' house. Second, Stotler argues that without preexisting probable cause to search the truck, only a search incident to arrest was justified.³ In that case, the bed of the truck was initially off-limits, and Stotler contends that McElfresh's discovery of hydrocodone pills in the cab, giving rise to probable cause for a search of the bed of the truck, is not believable.

The Court, however, finds both men (Childress and McElfresh) credible. As Judge Cudmore stated in his Report and Recommendation, Childress' information was self-incriminating and corroborated by the fact that, as predicted, Stotler arrived at his home in a teal pickup truck at 5:00 p.m. The Court agrees that officers were justified in relying on Childress'

---

³In his Objection, Stotler does not challenge the propriety of his arrest on the April 2006, arrest warrant. The Court notes, however, that it agrees with Judge Cudmore's conclusion that an arrest based on this warrant was proper. The Fourth Amendment does not impose time limits on warrants beyond the requirement that all searches and seizures be "reasonable." United States v. Martin, 399 F.3d 879, 881 (7th Cir. 2005). Here, the Court identifies no factor making this seizure unreasonable. Contra id. (noting that an arrest might be unreasonable where the statute of limitations for the offense had passed or where the police failed to check whether the warrant remained unresolved).

information regarding the planned drug transaction in determining that they had probable cause to believe the car contained contraband or evidence of a crime, at the time Stotler <u>departed</u> from Childress' house.  This Court differs from Judge Cudmore only to the extent of finding that probable cause to search the truck existed as Stotler pulled away from Childress' house, rather than when he arrived there.  The departure time is the point at which the police had probable cause to believe evidence of a crime would be found in the truck.  See <u>United States v. Washburn</u>, 383 F.3d 638, 642 (7th Cir. 2004) (holding that an informant who implicates himself can be considered reliable even where he expects consideration for his assistance).  Because a search of a vehicle based on probable cause extends to anyplace in which contraband or evidence could be concealed, the officers' search of the entire truck was justified.  See <u>United States v. Patterson</u>, 65 F.3d 68, 70 (7th Cir. 1995); <u>United States v. McGuire</u>, 957 F.2d 310, 314 (7th Cir. 1992).

Similarly, the Court finds McElfresh's testimony credible as well. While McQuern did not observe McElfresh discover the hydrocodone pills, McQuern, Norris, and Martin all heard him announce his discovery, and McQuern and Norris saw him hold up the pills.  Stotler presented no

evidence supporting his theory that McElfresh deliberately planted the pills, and the Court finds the bare allegation unpersuasive. The Court accepts McElfresh's testimony as true. It follows that once the officers found evidence of a crime in their search of the cab, even if the truck bed was off-limits in a search incident to arrest, they then had probable cause to search the bed. See United States v. Johnson, 383 F.3d 538, 545 (7th Cir. 2004) (holding that discovery of a suspected controlled substance on the defendant alone provided probable cause to search his entire vehicle).

THEREFORE, Defendant's Objection to Report and Recommendation by Magistrate Cudmore Entered February 27, 2008 [sic] (d/e 26) is OVERRULED. The Court adopts the Report and Recommendation (d/e 25) with one change -- being that probable cause to search the vehicle existed as Stotler drove away from Childress' house. The Motion to Suppress Evidence (d/e 12) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER: March 19, 2008

    FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE